(Slip Opinion) OCTOBER TERM, 2024 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CUNNINGHAM ET AL. *v.* CORNELL UNIVERSITY ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 23–1007.   Argued January 22, 2025—Decided April 17, 2025

The Employee Retirement Income Security Act of 1974 (ERISA) prohibits plan fiduciaries from causing a plan to engage in certain transactions with parties in interest.  29 U. S. C. §1106.  A separate provision, §1108(b)(2)(A), exempts from these prohibitions any transaction that involves "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."  The question presented is whether, to state a claim under §1106, a plaintiff must plead that §1108(b)(2)(A) does not apply to an alleged prohibited transaction.

  Petitioners represent a class of current and former Cornell University employees who participated in two defined-contribution retirement plans from 2010 to 2016.  In 2017, they sued Cornell and other plan fiduciaries for allegedly causing the plans to engage in prohibited transactions for recordkeeping services with the Teachers Insurance and Annuity Association of America-College Retirement Equities Fund and Fidelity Investments Inc., in violation of §1106(a)(1)(C).  Petitioners claimed the plans paid these service providers substantially more than reasonable recordkeeping fees.  The District Court dismissed the prohibited-transaction claim, and the Second Circuit affirmed.  The Second Circuit held that §1108(b)(2)(A) is incorporated into §1106(a)'s prohibitions, requiring plaintiffs to plead that a transaction was "unnecessary or involved unreasonable compensation" to survive a motion to dismiss.  86 F. 4th 961, 975.

*Held*: To state a claim under §1106(a)(1)(C), a plaintiff need only plausibly allege the elements contained in that provision itself, without addressing potential §1108 exemptions.  Pp. 6–15.

(a) Section 1106(a)(1)(C) contains three elements: It prohibits fiduciaries from (1) "caus[ing a] plan to engage in a transaction" (2) that the fiduciary "knows or should know . . . constitutes a direct or indirect . . . furnishing of goods, services, or facilities" (3) "between the plan and a party in interest." Its bar is categorical and does not remove from its scope transactions that were necessary or involved reasonable compensation. The exemptions in §1108 do not impose additional pleading requirements for §1106(a)(1) claims. When a statute has "exemptions laid out apart from the prohibitions," and the exemptions "expressly refe[r] to the prohibited conduct as such," the exemptions ordinarily constitute "affirmative defense[s]" that are "entirely the responsibility of the party raising" them. *Meacham* v. *Knolls Atomic Power Laboratory*, 554 U. S. 84, 91, 95. Like the exemptions at issue in *Meacham*, the §1108 exemptions are structured as affirmative defenses that must be pleaded and proved by defendants who seek to benefit from them. Pp. 6–8.

(b) Respondents' contrary arguments are unpersuasive. First, the "[e]xcept as provided in section 1108" language in §1106(a) does not incorporate §1108 exemptions as elements of §1106(a) violations. That reading ignores that Congress wrote the §1108 exemptions "in the orthodox format of an affirmative defense" separate from the prohibitions. *Meacham*, 554 U. S., at 102. The headings of the sections, "Prohibited transactions" for §1106 and "Exemptions from prohibited transactions" for §1108, confirm this understanding. Respondents also fail to explain why some but not all §1108 exemptions should be treated as elements of §1106(a) claims. Yet requiring plaintiffs to plead and disprove all potentially relevant §1108 exemptions would be impractical, given that there are 21 statutory exemptions and hundreds of regulatory exemptions. Pp. 9–12.

(c) Respondents' reliance on *United States* v. *Cook*, 17 Wall. 168, is misplaced. *Cook* established "a rule of criminal pleading" based on constitutional considerations not present in the civil context. *United States* v. *Reese*, 92 U. S. 214, 232. Even in criminal cases, it remains settled that "'an indictment or other pleading . . . need not negative the matter of an exception made by a proviso or other distinct clause.'" *Dixon* v. *United States*, 548 U. S. 1, 13. Pp. 12–13.

(d) Finally, respondents' practical concerns about meritless litigation cannot overcome the statutory text and structure. District courts have various tools at their disposal to screen out meritless claims, including requiring plaintiffs to file a reply addressing exemptions under Federal Rule of Civil Procedure 7(a), dismissing claims that fail to identify a concrete injury under Article III, limiting discovery, imposing Rule 11 sanctions, and ordering cost shifting under §1132(g)(1). Pp. 13–15.

Syllabus

86 F. 4th 961, reversed and remanded.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.  ALITO, J., filed a concurring opinion, in which THOMAS and KAVANAUGH, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

_____

No. 23–1007

_____

## CASEY CUNNINGHAM, ET AL., PETITIONERS *v*. CORNELL UNIVERSITY, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[April 17, 2025]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. §1001 *et seq*., prohibits ERISA plan fiduciaries from causing a plan to enter into certain transactions with parties in interest. §1106. A separate part of the statute, §1108(b)(2)(A), exempts from §1106's prohibitions any transaction that involves "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." The question presented is whether, to state a claim under §1106, a plaintiff must plead that §1108(b)(2)(A) does not apply to an alleged transaction between a plan and a party in interest. The answer is no. The Court holds that §1108 sets out affirmative defenses, so it is defendant fiduciaries who bear the burden of pleading and proving that a §1108 exemption applies to an otherwise prohibited transaction under §1106.

# I

## A

Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries." §1001(b). It did so by "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." *Ibid.* To that end, every ERISA plan must have at least one named fiduciary with authority to control and manage the operation and administration of the plan. See §1102(a)(1); see also §1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets").

ERISA subjects plan fiduciaries to certain fiduciary duties derived from the common law of trusts. See §1104(a); *Central States, Southeast & Southwest Areas Pension Fund* v. *Central Transport, Inc.*, 472 U. S. 559, 570 (1985). One is the duty of loyalty, which requires plan fiduciaries to act "solely in the interest of the [plan's] participants and beneficiaries." §1104(a)(1)(A). Among other things, the duty of loyalty requires the fiduciary to "deal fairly and honestly with beneficiaries," *Varity Corp.* v. *Howe*, 516 U. S. 489, 506 (1996) (citing G. Bogert & G. Bogert, Law of Trusts and Trustees §543, pp. 218–219 (rev. 2d ed. 1992)), so as "to ensure that a plan receives all funds to which it is entitled," *Central Transport*, 472 U. S., at 571.

Section 1106 "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Trust and Sav. Bank* v. *Salomon Smith Barney Inc.*, 530 U. S. 238, 241–242 (2000) (quoting *Commissioner* v. *Keystone Consol. Industries, Inc.*, 508 U. S. 152, 160 (1993)). Specifically, §1106(a)(1) states that,

"[e]xcept as provided in section 1108," a fiduciary "shall not cause the plan to engage" in certain transactions with a "party in interest."[1] The Act, in turn, defines "'party in interest'" to include various plan insiders, including the plan's administrator, sponsor, and its officers, as well as entities "providing services to [the] plan." §1002(14). This case concerns the prohibited transaction set out in §1106(a)(1)(C), which bars a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest."

Section 1108 separately enumerates 21 exemptions to those prohibited transactions. Relevant here is §1108(b)(2)(A), which exempts from §1106(a)(1)(C) any transaction that involves "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." §1108(b)(2)(A).

#### B

Respondent Cornell University is the named administrator for two defined-contribution retirement plans.[2] Cornell employees maintain individual investment accounts within those plans, the value of which "is determined by the market performance of employee and employer contributions, less expenses." *Tibble* v. *Edison Int'l*, 575 U. S. 523, 525 (2015). Those expenses include fees paid to service providers.

_____

[1] Section 1106 also prohibits certain transactions between plans and the fiduciaries who manage them. See §1106(b).

[2] The facts that follow are from petitioners' operative complaint. Because this case comes to the Court on review of respondents' motion to dismiss that complaint, the Court accepts petitioners' allegations as true. See *Hughes* v. *Northwestern Univ.*, 595 U. S. 170, 173 (2022).

In 2011, Cornell retained the Teachers Insurance and Annuity Association of America-College Retirement Equities Fund (TIAA) and Fidelity Investments Inc. (Fidelity). TIAA and Fidelity offered investment options to plan participants and served as recordkeepers for the retirement plans by tracking account balances and providing account statements. Cornell compensated TIAA and Fidelity with fees from a set portion of plan assets.

Petitioners represent a class of current and former Cornell employees who participated in the plans from 2010 to 2016. In 2017, they sued Cornell and other plan fiduciaries alleging, as relevant here, that respondents violated §1106(a)(1)(C) by causing the plans to engage in prohibited transactions for recordkeeping services. "[B]ecause TIAA and Fidelity are service providers and hence parties in interest," petitioners argued, "their furnishing of recordkeeping and administrative services to the [p]lans is a prohibited transaction unless Cornell proves an exemption." 86 F. 4th 961, 978 (CA2 2023) (internal quotation marks and alterations omitted). The plans, according to petitioners, also paid TIAA and Fidelity more than a reasonable recordkeeping fee. A reasonable fee (petitioners allege) would be approximately $35 per participant per year, but instead the plans paid between $115 to $183 per participant for one plan and $145 to $200 per participant for the other. *Ibid.*

Respondents moved to dismiss the prohibited-transaction claim, and the District Court granted their motion. The court held that a plaintiff, in addition to pleading the prohibited-transaction elements contained within §1106(a)(1)(C), must also allege "some evidence of self-dealing or other disloyal conduct." 2017 WL 4358769, *10 (SDNY, Sept. 29, 2017). Finding that petitioners failed to do so, the District Court dismissed their §1106(a)(1)(C) claim.

The Second Circuit affirmed, but did so on a different

ground. It concluded that "the language of §1106(a)(1) cannot be read to demand explicit allegations of 'self-dealing or disloyal conduct.'" 86 F. 4th, at 975. The Court of Appeals further observed, however, that §1106(a)(1)(C), if read "in isolation," "would appear to prohibit payments by a plan to any entity providing it with any services." *Id.*, at 973. Other Courts of Appeals determined that such a reading would lead to "'absurd results,'" the Second Circuit noted, because it would seemingly "'prohibit fiduciaries from paying third parties to perform essential services in support of a plan.'" *Ibid.*

Thus, to limit the reach of §1106(a)(1)(C), the Second Circuit held the exemptions to §1106(a)'s prohibited transactions contained in §1108 imposed additional pleading requirements. The §1108 exemptions, the court reasoned, cannot "be understood merely as affirmative defenses to the conduct proscribed in §1106(a)." *Id.*, at 975. Rather, in the Second Circuit's view, "at least some of those exemptions— particularly, the exemption for reasonable and necessary transactions codified by §1108(b)(2)(A)—are incorporated into §1106(a)'s prohibitions," meaning a plaintiff must affirmatively plead them to survive a motion to dismiss. *Ibid.* In other words, a plaintiff alleging a prohibited transaction under §1106(a)(1)(C) must also allege "that [the] transaction was unnecessary or involved unreasonable compensation." *Id.*, at 975 (emphasis deleted) (citing §§1106(a)(1)(C), 1108(b)(2)(A)). Concluding that petitioners had not done so, the Court of Appeals affirmed the dismissal of their §1106(a)(1)(C) claim.[3] In reaching that conclusion, the Second Circuit split from the Eighth Circuit, which has held

_____

[3] Although petitioners alleged that respondents paid more than a "reasonable" fee for TIAA and Fidelity's recordkeeping services, see *supra*, at 4, the Second Circuit rejected that allegation as insufficient, reasoning that "it is not enough to allege that the fees were higher than some theoretical alternative service." 86 F. 4th, at 978. Whether respondents paid an unreasonable fee, the court explained, turned on the nature of

that no additional pleading requirements beyond §1106(a)(1) apply to prohibited-transaction claims. See *Braden* v. *Wal-Mart Stores, Inc.*, 588 F. 3d 585, 600–602 (CA8 2009).

This Court granted certiorari to decide whether a plaintiff can state a claim for relief by simply alleging that a plan fiduciary engaged in a transaction proscribed by §1106(a)(1)(C), or whether a plaintiff must plead allegations that disprove the applicability of the §1108(b)(2)(A) exemption. 603 U. S. ___ (2024). The Court concludes that plaintiffs need do no more than plead a violation of §1106(a)(1)(C), and we therefore reverse.

## II

Section 1106(a)(1)(C) contains three elements. It prohibits fiduciaries from (1) "caus[ing a] plan to engage in a transaction" (2) that the fiduciary "knows or should know . . . constitutes a direct or indirect . . . furnishing of goods, services, or facilities" (3) "between the plan and a party in interest." Section 1106(a)(1)(C)'s bar is categorical: Any transaction that satisfies its three elements is presumptively unlawful. Nothing in that section removes from its categorical bar transactions that were necessary for the plan or involved reasonable compensation. Accordingly, under §1106(a)(1)(C), plaintiffs need only plausibly allege each of those elements of a prohibited-transaction claim.

The exemptions set forth in a different part of the statute, §1108, do not impose additional pleading requirements to make out a §1106(a)(1) claim. See §1106(a) (prohibiting

———————

the services TIAA and Fidelity provided, as "it is not unreasonable to pay more for superior services." *Ibid.* The Court of Appeals thus affirmed the dismissal of petitioners' §1106(a)(1)(C) claim because (in its view) petitioners "failed to allege any facts going to the relative quality of the recordkeeping services provided, let alone facts that would suggest the fees were 'so disproportionately large' that they 'could not have been the product of arm's-length bargaining.'" *Id.*, at 978–979 (quoting *Jones* v. *Harris Associates L. P.*, 559 U. S. 335, 346 (2010)).

certain transactions between the plan and a party in interest "[e]xcept as provided in section 1108"). There is a well-settled "general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." *FTC* v. *Morton Salt Co.*, 334 U. S. 37, 44–45 (1948). In particular, when a statute has "exemptions laid out apart from the prohibitions," and the exemptions "expressly refe[r] to the prohibited conduct as such," the exemptions ordinarily constitute "affirmative defense[s]" that are "entirely the responsibility of the party raising" them. *Meacham* v. *Knolls Atomic Power Laboratory*, 554 U. S. 84, 91, 95 (2008). That describes exactly how ERISA is structured: The exemptions to §1106(a) prohibited transactions are enumerated separately in §1108, and §1108 recognizes that the substantive "prohibitions" are "provided in section 1106" of the statute. §1108(b).

This Court's decision in *Meacham* is instructive. At issue there were the Age Discrimination in Employment Act's general prohibitions on age discrimination, §§623(a)–(c), (e), which "are subject to a separate provision, §623(f), [that] creat[es] exemptions for employer practices 'otherwise prohibited under subsectio[n] (a), (b), (c), or (e).'" 554 U. S., at 91. Like §1108(b)(2)(A), the §621(f) exemption in *Meacham* shielded defendants from liability if the challenged conduct was "reasonable." Compare §1108(b)(2)(A) with §623(f)(1). Given Congress's structural choice to place the prohibited conduct and the relevant exemptions in different statutory provisions, this Court deemed it "no surprise" that the exemptions presented "'affirmative defenses.'" *Id.*, at 91. Accordingly, *Meacham* held that the ADEA assigned to defendants both the burden to "produce evidence raising the defense" of reasonableness and the burden to "persuade the factfinder of its merit." *Id.*, at 87.

The same is true of ERISA. Like the exemptions at issue

in *Meacham*, the §1108 exemptions are "writ[ten] in the or-
thodox format of an affirmative defense." *Id.*, at 102. Un-
derstood as affirmative defenses, the §1108 exemptions
must be pleaded and proved by the defendant who seeks to
benefit from them. See *Taylor* v. *Sturgell*, 553 U. S. 880,
907 (2008) ("Ordinarily, it is incumbent on the defendant to
plead and prove [an affirmative] defense"). A plaintiff need
only allege the three elements within §1106(a)(1)(C), not-
withstanding the potential applicability of a §1108 exemp-
tion, because an "affirmative defense" is "not something the
plaintiff must anticipate and negate in her pleading." *Perry*
v. *Merit Systems Protection Bd.*, 582 U. S. 420, 435, n. 9
(2017); see also Fed. Rule Civ. Proc. 8(c) (requiring defend-
ants, "[i]n responding to a pleading," to "affirmatively state
any . . . affirmative defense").

Of course, a plaintiff will not prevail by simply pleading,
and later proving, the §1106(a) elements. If a defendant
establishes that a §1108 exemption applies, the
§1106(a)(1)(C) claim will ultimately fail. As relevant here,
this means that if respondents establish that a transaction
prohibited under §1106(a)(1)(C) was for "services necessary
for the . . . operation of the plan" and "no more than reason-
able compensation [was] paid therefor," §1108(b)(2), they
cannot be held liable for causing the plan to enter into the
transaction. At the pleading stage, however, it suffices for
a plaintiff plausibly to allege the three elements set forth in
§1106(a)(1)(C).[4]

––––––––––

[4] In some circumstances, principles from the common law of trusts can
help inform this Court's interpretation of ERISA. See *Varity Corp.* v.
*Howe*, 516 U. S. 489, 496 (1996); accord, *LaRue* v. *DeWolff, Boberg & As-
sociates, Inc.*, 552 U. S. 248, 254, n. 4 (2008) ("[T]he common law of trusts
. . . informs our interpretation of ERISA's fiduciary duties"). Here, those
principles would have been consistent with the Court's holding, insofar
as trustees were "under a duty to the beneficiary not to delegate to others
the doing of acts which the trustee can reasonably be required personally
to perform." Restatement (Second) of Trusts §171, p. 373 (1957) (boldface
deleted). A trustee could nonetheless delegate certain duties to an

## III
## A

Against this backdrop, respondents nevertheless insist that §1106(a)(1)(C) is best read to incorporate as an element the exception set out in §1108(b)(2)(A) and that ERISA plaintiffs must therefore plead and prove the exemption's inapplicability. To support that construction, they highlight that §1106(a) begins by stating that its prohibitions apply "[e]xcept as provided in section 1108." That proviso, they contend, shows that §1106(a)(1)(C) and §1108(b)(2)(A) together define a prohibited transaction, such that plaintiffs bear the burden of pleading and proving the elements in both provisions.

This alternative reading of the statute suffers from several flaws. For one, it ignores that Congress wrote the §1108 exemptions "in the orthodox format of an affirmative defense," with the exemptions "laid out apart" from the prohibitions in separate statutory provisions. *Meacham*, 554 U. S., at 91, 102. As discussed above, *supra,* at 6–8, that

_____

agency only upon a showing that "the agent's employment was necessary, that the trustee entered into a reasonable contract of employment with the agent, and that the agent rendered services to the trust." A. Hess, G. Bogert, & G. Bogert, Law of Trusts and Trustees §555, p. 54 (3d ed. 2024). Critically, the common law of trusts "placed the burden squarely on the trustee" to make that showing. *Ibid.* The Court's opinion does not rest on the common law of trusts, however. First, ERISA plans are sufficiently complex so that a question would arise as to whether fiduciaries can perform all necessary tasks themselves without plans incurring greater costs. Second, ERISA allows fiduciaries to delegate certain duties, see, *e.g.*, 29 U. S. C. §1105(c) (describing a mechanism "for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities"), and requires engaging the services of outside third parties in certain contexts, see, *e.g.*, §1023(a)(3) (providing that an administrator of a plan "shall engage . . . an independent qualified public accountant" to conduct examinations of financial statements and records). Third, the text and structure of ERISA establish that fiduciaries bear the burden of pleading and proving §1108's exemptions.

structural decision forecloses respondents' argument.

If there were any remaining doubt, the headings of §1106 and §1108 confirm that it is the former, on its own, that defines the offense. See *Yates* v. *United States*, 574 U. S. 528, 540 (2015) (plurality opinion) ("'[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute'"). Section 1106's heading is plain: "Prohibited transactions." (Boldface deleted.) Section 1108, meanwhile, reads: "Exemptions from prohibited transactions." (Boldface deleted.) That Congress chose to label §1108 as "exemptions" suggests that, even if §1108(b)(2)(A) were best understood as an element of a §1106(a)(1)(C) claim (and not an affirmative defense), the statute should still be read to place on ERISA defendants the burden of proving the exemption's applicability. That is because this Court has held that "the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*." *Schaffer* v. *Weast*, 546 U. S. 49, 57 (2005) (emphasis added).

Structural considerations also weigh against respondents' reading of §1106(a)(1)(C) and §1108(b)(2)(A). Respondents' interpretation of the "except as provided" language would imply that all of the §1108 exemptions are incorporated as elements of every §1106(a) violation. After all, each of the exemptions is set forth in §1108, and the "[e]xcept as provided in section 1108" language applies to §1106(a) in its entirety. §1106(a); cf. *Cyan, Inc.* v. *Beaver County Employees Retirement Fund*, 583 U. S. 416, 428 (2018) (rejecting an interpretation that "cherry pick[ed] from the material covered by the statutory cross-reference," since "the except clause points to 'section 77p' as a whole— not to paragraph 77p(f)(2)"). Respondents fail to offer a principled basis for treating some, but not all, of the §1108

exemptions as elements incorporated into §1106(a)'s prohibitions. Yet Congress intended for §1106(a) to create "*per se* prohibitions on transacting with a party in interest." *Harris Trust*, 530 U. S., at 252; see *id*., at 241–242. Incorporating all 21 §1108 exemptions as elements into the otherwise straightforward prohibitions in §1106(a) would plainly frustrate Congress's intent to create a "categorica[l]" bar. *Keystone*, 508 U. S., at 160.

Indeed, because §1106(a), by its terms, sets out *per se* prohibitions, it would make little sense to put the onus on plaintiffs to plead and disprove any potentially relevant separate §1108 exemptions. That burden, moreover, would not be limited to those statutory exemptions: Beyond the 21 exemptions enumerated in §1108, the Secretary of Labor has promulgated hundreds of regulatory exemptions pursuant to §1108. See §1108(a) (authorizing the Secretary to "grant a conditional or unconditional exemption of any fiduciary or transaction, or class of fiduciaries or transactions, from all or part of the restrictions imposed by sectio[n] 1106"); see also Brief for United States as *Amicus Curiae* 3, and n. 1. When statutory exceptions "are numerous," "fairness usually requires that the adversary give notice of the particular exception upon which it relies and therefore that it bear the burden of pleading." 2 R. Mosteller et al., McCormick on Evidence §337, p. 699 (8th ed. 2020); cf. *NLRB* v. *Kentucky River Community Care, Inc.*, 532 U. S. 706, 711 (2001). That Congress enumerated 21 separate exceptions and then authorized the Secretary to add additional classes of exempted transactions thereto only heightens the fairness concern, as respondents' proposed approach would require plaintiffs to plead and dispute myriad exceptions before knowing which of them the defendant will seek to invoke. That would be especially illogical here, where several of the §1108 exemptions turn on facts one would expect to be in the fiduciary's possession. See, *e.g.*, §1108(b)(16) (exempting transactions involving

the purchase or sale of securities or other property between a plan and a party in interest, provided the transaction occurred over certain approved platforms and complied with applicable rules of the Securities and Exchange Commission, the price and compensation reflect an arm's-length transaction, and the plan fiduciary received notice of the execution of such transaction through the approved platform, among other criteria); §1108(b)(19) (exempting certain prohibited "cross-trading" transactions based on the satisfaction of nine separate conditions related to a plan manager's dealings and receipt of information from an investment manager).

B

Respondents' argument from precedent is similarly unavailing. Respondents rely on this Court's decision in *United States* v. *Cook*, 17 Wall. 168 (1872), to support their construction of §1108(b)(2)(A) as an additional element of a §1106(a)(1)(C) claim. *Cook* held that, "[w]here a statute defining an offence contains an exception," the pleadings must allege that the prohibited conduct does not fall within the exception whenever the exception "is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted." *Id.*, at 173. In respondents' telling, §1106(a)(1)(C) is the kind of statute the Court contemplated in *Cook*. Respondents aver that it is routine for service providers to "perform many necessary and valuable functions for plan participants and fiduciaries," such as "offer[ing] investment funds and platforms, investment assistance, and recordkeeping services," as well as "perform[ing] critical accounting and legal functions." Brief for Respondents 11. Many of those transactions are legal, respondents maintain, even though they fall within the scope of §1106(a)(1)(C), because they are "reasonable arrangements" that are "necessary for the . . . operation of the plan"

and involve "reasonable compensation" under §1108(b)(2)(A). Thus, in respondents' view, §1108(b)(2)(A) is a missing "ingredien[t]" "incorporated with the language" of a §1106(a)(1)(C) violation, for the lawfulness of these transactions will often turn on their necessity and reasonableness. *Cook*, 17 Wall., at 173.

Respondents ignore, however, that this Court has said *Cook* created "a rule of *criminal* pleading" for indictments intended to ensure that defendants have fair notice "of every fact which is legally essential to the punishment to be inflicted." *United States* v. *Reese*, 92 U. S. 214, 232 (1876) (emphasis added). Indeed, *Cook* "construed" the "constitutional right 'to be informed of the nature and cause of'" a criminal accusation. *United States* v. *Cruikshank*, 92 U. S. 542, 557–558 (1876). Hence, it rested on constitutional considerations not present in the civil context. Moreover, the Court has applied the *Cook* rule narrowly, such as when an exception to a criminal offense is contained within the same sentence of the provision defining the offense. See, *e.g.*, *United States* v. *Britton*, 107 U. S. 655, 669–670 (1883); *United States* v. *Vuitch*, 402 U. S. 62, 67–68, 70 (1971). Even in the criminal context, it remains a "'settled rule'" "'that an indictment or other pleading . . . need not negative the matter of an exception made by a proviso or other distinct clause.'" *Dixon* v. *United States*, 548 U. S. 1, 13 (2006). *Cook* is thus of no help to respondents.

C

Lastly, respondents contend that there will be an avalanche of meritless litigation if disproving the applicability of §1108(b)(2)(A) is not treated as a required element of pleading §1106(a)(1)(C) violations. ERISA plans, after all, often have thousands of participants and hold millions of dollars in assets. The "realities of modern trust administration," respondents attest, therefore require fiduciaries to transact with service providers. Brief for Respondents 47;

see also Law of Trusts and Trustees §555, at 48 ("[E]xpecting a trustee to personally perform every single act necessary to execute a modern trust not only is unreasonable but may not even be the best way to assure efficient and knowledgable administration of the trust").  To the extent such transactions fall within the scope of §1106(a)(1)(C), respondents argue, most would be lawful in light of §1108(b)(2)(A)'s exemption for "necessary" and "reasonable" transactions.  Yet if plaintiffs must plead only that a transaction barred by §1106(a)(1)(C)'s plain text occurred, respondents argue, plaintiffs could too easily get past the motion-to-dismiss stage and subject defendants to costly and time-intensive discovery.  Such meritless litigation, respondents claim, would harm the administration of plans and force plan fiduciaries and sponsors to bear most of the associated costs.

These are serious concerns but they cannot overcome the statutory text and structure.  Here, Congress "set the balance" in "creating [an] exemption and writing it in the orthodox format of an affirmative defense," so the Court must "read it the way Congress wrote it." *Meacham*, 554 U. S., at 101–102.

To the extent future plaintiffs do bring barebones §1106(a)(1)(C) suits, district courts can use existing tools at their disposal to screen out meritless claims before discovery.  For instance, if a fiduciary believes an exemption applies to bar a plaintiff's suit and files an answer showing as much, Federal Rule of Civil Procedure 7 empowers district courts to "insist that the plaintiff" file a reply "'put[ting] forward specific, nonconclusory factual allegations'" showing the exemption does not apply. *Crawford-El* v. *Britton*, 523 U. S. 574, 598 (1998); cf. *Cole* v. *Carson*, 935 F. 3d 444, 446 (CA5 2019) ("[C]ourts have developed procedures and pretrial practices, including . . . a reply to an answer under Rule 7(a) on order of the district court, particularized to address the defense of immunity").  Lower courts may then

dismiss the suits of those plaintiffs who cannot plausibly do so. District courts must also, consistent with Article III standing, dismiss suits that allege a prohibited transaction occurred but fail to identify an injury. Cf. *Thole* v. *U. S. Bank N. A.*, 590 U. S. 538, 544 (2020) (explaining that "'Article III standing requires a concrete injury even in the context of a statutory violation'" and affirming the dismissal of an ERISA claim because "plaintiffs . . . failed to plausibly and clearly allege a concrete injury" (quoting *Spokeo, Inc.* v. *Robins*, 578 U. S. 330, 341 (2016)). For §1106(a)(1)(C) claims that do proceed past the motion to dismiss stage, moreover, district courts retain discretionary authority to expedite or limit discovery as necessary to mitigate unnecessary costs. Additionally, in cases where an exemption obviously applies, and a plaintiff and his counsel lack a good-faith basis to believe otherwise, Rule 11 may permit a district court to impose sanctions against them. Lastly, it bears mention that ERISA itself gives district courts an additional tool to ward off meritless litigation: cost shifting. See §1132(g)(1) ("[T]he court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). District courts therefore have available a variety of means to address the concerns raised by respondents and the court below.

\* \* \*

The Court today holds that plaintiffs seeking to state a §1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less. Plaintiffs are not required to plead and prove that the myriad §1108 exemptions pose no barrier to ultimate relief. The judgment of the Second Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 23–1007

———————

## CASEY CUNNINGHAM, ET AL., PETITIONERS *v.* CORNELL UNIVERSITY, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[April 17, 2025]

JUSTICE ALITO, with whom JUSTICE THOMAS and JUSTICE KAVANAUGH join, concurring.

I join all of the opinion of the Court for the simple reason that 29 U. S. C. §1108 sets out affirmative defenses, and it is black letter law that a plaintiff need not plead affirmative defenses.[1] See Fed. Rule Civ. Proc. 8(c); *Taylor* v. *Sturgell*, 553 U. S. 880, 907 (2008). Here, as the Court points out, §1108 sets out a long list of affirmative defenses, and it would make no sense to require a complaint to anticipate and attempt to refute all the affirmative defenses that a defendant might raise.

Unfortunately, this straightforward application of established rules has the potential to cause—and, indeed, I expect it will cause—untoward practical results. The administrator of an ERISA plan like the one at issue will almost always find it necessary to employ outside firms to provide services that the plan needs. When it does so, these outside firms become "'part[ies] in interest'" under the terms of ERISA, see §1002(14)(B), and as a result, their provision of

———————

[1] The decision does not rely on the common law of trusts. As the Court points out, the Employee Retirement Income Security Act of 1974 (ERISA) departs in important ways from that body of case law; ERISA plans like Cornell's are vastly different from garden variety common law trusts; and in my judgment, reliance here on the common law of trusts would be unhelpful and, indeed, misleading.

services to the plan is unlawful under §1106 unless one of the exemptions in §1108 applies.  The upshot is that all that a plaintiff must do in order to file a complaint that will get by a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to allege that the administrator did something that, as a practical matter, it is bound to do.

In this case, for example, Cornell set up a plan under which employees could invest in the Teachers Insurance and Annuity Association of America-College Retirement Equities Fund and Fidelity funds, and then those companies provided the recordkeeping services for their own funds, as they customarily do.  There is nothing nefarious about any of that.  Yet under our decision that is all that a plaintiff must plead to survive a motion to dismiss.  And, in modern civil litigation, getting by a motion to dismiss is often the whole ball game because of the cost of discovery. Defendants facing those costs often calculate that it is efficient to settle a case even though they are convinced that they would win if the litigation continued.  See J. Beisner, Discovering a Better Way: The Need for Effective Civil Litigation Reform, 60 Duke L. J. 547, 550 (2010); see also *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U. S. 336, 347 (2005); Chubb, Excessive Litigation Over Excessive Plan Fees in 2023, pp. 2–3 (Apr. 2023), https://www.chubb.com/content/dam/chubb-sites/chubb-com/us-en/business-insurance/fiduciary-liability/pdfs/excessive-litigation-over-excessive-plan-fees-infographic.pdf (noting that the number of excessive plan fee cases that settle has increased six-fold since 2016 and that these cases can "cost more to defend than to settle").  When that happens in a case like the one now before us, the few plan participants named as plaintiffs and their attorneys get a windfall, and a cost that the administrator incurs may be passed on to the other plan participants.

With a realistic appreciation of this dynamic, the Second Circuit tried to formulate a rule that would weed out plainly

unmeritorious suits at the pleading stage. The court attempted to achieve an admirable goal, but established pleading rules do not allow that workaround.

In Part III–C of its opinion, the Court sets out some alternative safeguards. Perhaps the most promising of these is the suggestion, offered by the Solicitor General, that a district court may insist that a plaintiff file a reply to an answer that raises one of the §1108 exemptions as an affirmative defense.[2] *Ante*, at 17. It does not appear that this is a commonly used procedure, but the Court has endorsed its use in the past. See *Crawford-El* v. *Britton*, 523 U. S. 574, 598 (1998). District courts should strongly consider utilizing this option—and employing the other safeguards that the Court describes—to achieve "the prompt disposition of insubstantial claims." *Id.*, at 597. Whether these measures will be used in a way that adequately addresses the problem that results from our current pleading rules remains to be seen.

---

[2] See Brief for United States as *Amicus Curiae* 30–31.